# 24-1052-cv

## UNITED STATES COURT OF APPEALS
### *for the*
### SECOND CIRCUIT

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

> Plaintiff-Appellee,

V.

BERNARD FINDLEY AND HALITRON, INC.,

> Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (BRIDGEPORT)
CASE NO. 20-cv-00397-SRU

**APPELLANTS BERNARD FINDLEY AND HALITRON, INC.'S REPLY BRIEF**

Dated: November 22, 2024

**PASTORE LLC**

Joseph M. Pastore III
Leanne M. Shofi
4 High Ridge Park, Third Floor
Stamford, CT 06905
Tel: (203) 658-8454
Jpastore@pastore.net
Lshofi@pastore.net

*Counsel for Appellants*

**<u>Table of Contents</u>**

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .....................................................................................3

  I.   The SEC Ignores that FRCP 50 Motions Should Have Been Granted ...........3

  II.   No Reasonable Jury Could Find for the SEC .....................................4

    a.   The Record Shows No Material Misstatements Regarding the audit or stock buyback program ......................................................................5

      i.   The Record Shows Appellants' Statements About the Audit Were True..7

      ii.  True Statements Regarding the Stock Buyback ........................................9

  III.   Ordering Disgorgement was Contrary to Supreme Court and Second Circuit Precedent and Reversible Error ...............................................11

    a.   The SEC completely ignores *Liu* and *Govil* ...............................11

    b.   Disgorgement Could Not Be Ordered Under *Govil* and *Liu* .......................14

  IV.   The Civil Penalties are Unsupported by the Record and *Jarkesy* ...............16

CONCLUSION ...................................................................................19

CERTIFICATE OF COMPLIANCE ........................................................20

CERTIFICATE OF SERVICE ...............................................................21

i

## <u>Table of Authorities</u>

Page(s)

**Cases**

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000)............................................................... 6

*In re Express Scripts Holding Co. Sh. Lit.*,
   773 Fed. Appx. 9 (2d Cir. 2019) ....................................................... 5

*In re Phillip Morris International Inc. Securities Litigation*,
   89 F.4th 408 (2d Cir. 2023)............................................................... 5

*Liu v. SEC*,
   591 U.S. 71 (2020) .......................................................... 11, 12, 13, 14

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133 (2000) ........................................................................... 4

*Runner v. N.Y. Stock Exch., Inc.*,
   568 F.3d 383 (2d Cir. 2009)............................................................... 4

*SEC v. Govil*,
   86 F.4th 89 (2d Cir. 2023)..................................... 11, 12, 13, 14, 15

*SEC v. Jarkesy*,
   144 S. Ct. 2117 (2024) ................................................................ 16, 17

*U.S. ex rel O'Donnell v. Countrywide*,
   822 F.3d 650 (2d Cir. 2016)............................................................... 6

**Statutes**

15 U.S.C. § 78u(d)(5)............................................................................. 14

**Rules**

Federal Rule Appellate Procedure 32(a)(6) .......................................... 20

Federal Rule of Appellate Procedure 32(a)(5)....................................................... 20

Federal Rule of Appellate Procedure 32(a)(7)(B) ................................................. 20

## PRELIMINARY STATEMENT

The Judgment fundamentally violated Findley's Seventh Amendment right and improperly suggests scheme liability and personal gains to Findley even though those allegations were dropped by the SEC and not found by the jury. The Judgment violates the precedent of *Govil* and *Liu*. The Judgment was not "well within [the] discretion" of the District Court, as Appellee suggests, and lacks support from the record. Appellee's Brief merely parrots the position it championed during the five-day jury trial.[1] *See* A1593-97.

Appellee continues to argue that Appellants issued false and misleading press releases to attract entities who provided funding to Halitron in exchange for discounted shares of Halitron stock, which entities were not harmed investors. However, the record shows no untrue statements or omissions of material fact, no evidence of scienter, and no evidence of pecuniary harm to investors resulting from alleged misstatements. Appellee points to *no* evidence of investor pecuniary harm attributable to *any* alleged misstatements and *no* proof that disgorgement would go to investors. Further, despite the SEC's *post-trial* admission at the Judgment Hearing that it was "impossible" to find investors, the District Court accepted the SEC's post-trial, post-*Govil,* and post-judgment hearing *reversal* of its position to levy the very

---

[1] All defined terms herein take the meaning ascribed in Appellants' opening brief. (ECF No. 34). Citations to Appellants' opening brief filed on August 2, 2024 (ECF No. 34) are styled as "App. Brief __." Citations to the SEC's opening brief filed on October 8, 2024 (ECF No. 47) are styled as "Appellee's Brief __."

punishments that the Supreme Court recently held can *only* be imposed by juries under the Seventh Amendment – disgorgement, third-tier civil penalties, and permanent and temporary injunctions.

Appellee's arguments are void of evidence of falsity, materiality, or scienter, and the record shows only forward-looking, truthful, or opinion statements in press releases regarding the status of a financial audit and stock buyback program in this "fraud by hindsight" case where a start-up penny stock company was attempting to lawfully grow its business.

Ignoring *Liu* entirely and summarily dismissing *Govil*, Appellee erroneously points to this Court's pre-*Liu* and pre-*Govil* precedent for the proposition that the District Court had "broad discretion" to determine whether disgorgement was appropriate. However, the Supreme Court's requirement in *Liu* and this Court's ruling in *Govil* are clear—disgorgement must be for the "benefit of investors" who suffered pecuniary harm resulting from the alleged fraud. The SEC previously admitted that not only had it gone "*to extremely great lengths to find an investor to testify at trial,*" but that it would be "*virtually impossible*" and "*infeasible*" to identify investors. The SEC's post-hearing and post-*Govil* reversal that "the Commission has concluded that a distribution is feasible" was woefully insufficient to satisfy *Liu* and *Govil*. Indeed, Appellee's Brief even fails to cite *Liu*.

The District Court made its *own* findings of fact *after* it had admitted that

investors were "virtually impossible" to find. (A-1564-91; A-593-96). In doing so, the District Court failed to follow *Liu* and *Govil*. Findley was egregiously deprived of his Seventh Amendment right to a jury trial. Based on the foregoing, no reasonable jury could have found for Appellee. Accordingly, Appellants respectfully request (1) reversal of the denial of their Motions for Judgment as a Matter of Law, (2) reversal of a jury verdict and judgment finding securities law violations despite no evidence of falsity, materiality, or scienter, and (3) reversal of a disgorgement order in violation of *Govil* and civil third-tier penalties in violation of Findley's Seventh Amendment right.

## **ARGUMENT**

The SEC's Brief fails to address critical points made by Appellants requiring reversal, fails to address precedent, and rather than cite to evidence presented at trial (or lack thereof) relies substantially on the Judgment that improperly decided issues belonging to the jury and/or were entirely unsupported by the record. The Judgment below must be reversed.

### **I.   The SEC Ignores that FRCP 50 Motions Should Have Been Granted**

Point I of Appellants' moving Brief explains why Appellants' two FRCP 50 motions for judgment as a matter of law should have been granted, and why this Court should reverse denial of those motions upon its *de novo* review of the record. (App. Brief pp. 42-48). This case should never have reached the jury for a verdict because

3

the SEC presented no legally sufficient evidentiary basis for a reasonable jury to find for the SEC. Tellingly, the SEC does not mention or cite FRCP 50 in its Brief.

Denial of a Motion for Judgment as a Matter of Law is reviewed by this Court *de novo*, requiring "review of all of the evidence in the record," including of uncontradicted and unimpeached evidence from disinterested witnesses. *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000). For all of the reasons stated in Appellants' moving brief, and upon this Court's review of the record below, Appellants respectfully request that denial of the FRCP 50 motions be reversed.

## II.    No Reasonable Jury Could Find for the SEC

The SEC's Brief also fails to rebut the points made in Appellants' Brief detailing that, as a matter of law, no reasonable jury could find for the SEC. The SEC presented evidence of optimistic and forward-looking statements that were true and vetted by counsel, about an audit and stock buyback program, and *no* evidence that investors relied on those statements or suffered pecuniary harm by reliance on those statements. The SEC confused the jury by boostrapping issues and presenting testimony from just one investor who admitted that he had not relied on the statements erroneously found by the jury to be misleading in purchasing or selling his stock. The SEC took advantage of a district court judge who admitted that he did not understand the rationale behind the Supreme Court precedent of *Liu*. The

evidence below demonstrates that the SEC failed to meet its burden of proving its claims.

### a. The Record Shows No Material Misstatements Regarding the audit or stock buyback program

The SEC's Brief fails to show any materiality, falsity, or scienter supported by the record. It must do so. The SEC's Brief also fails to explain why Tas's testimony (the *only* investor to testify at trial) could be relied upon by the jury *or* the District Court when Tas *admitted* that he was *already* an investor at the time of the press releases erroneously found by the jury to be misleading, and that he purchased additional shares because the share price was so low. (A-867-70; A-864-65; A-869).

Neither immaterially false statements nor material true statements are actionable as securities fraud. *In re Phillip Morris International Inc. Securities Litigation*, 89 F.4th 408, 430 (2d Cir. 2023) (statement of opinion is not actionable despite speaker's failure to mention the possibility of contrary opinions). This includes statements, such as those at issue here, suggesting the hope that an event would occur. *In re Express Scripts Holding Co. Sh. Lit.*, 773 Fed. Appx. 9, 13 (2d Cir. 2019) (statements suggesting only hope that an event would occur does not become materially misleading when that event does not occur). Such protections are crucial for corporations, especially start-ups, preventing unjust penalties when they provide forward-looking optimism rather than focusing solely on the pessimistic

aspects of a company's growth forecast and business model. *Rombach* at 15 (misguided optimism is not actionable as fraud).

Here, Appellants paid $100,000 for an audit and were in the process of working through the audit, which became bogged down upon the acquisition of a revenue-generating company, yet the SEC took issue with statements about the *timing* of the audit and presented evidence of trading *volume* (not price) increasing after the press releases at issue (which releases contained far more information than just the statements about the audit and stock buyback program). The SEC also took issue with true statements about a stock buyback program. As a matter of law, the press releases erroneously found to be misleading were immaterial and/or true and/or statements of optimism.

Even if the SEC had proved any semblance of actionable misstatements or omissions (it did not), it clearly failed to prove scienter. Facts demonstrating *both* a motive and an opportunity to make the materially false or misleading statement can support scienter. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000). The record is devoid of both here. *See, e.g., U.S. ex rel O'Donnell v. Countrywide*, 822 F.3d 650 (2d Cir. 2016) (reversing jury verdict where government failed to prove scienter).

### i. The Record Shows Appellants' Statements About the Audit Were True

The SEC's Brief and the Judgment ignore the context of the press releases and focus on Findley's email complaint to the auditor that there was "no end in sight" after additional information was requested by the auditor. Findley's optimistic representations about the status of the audit, which uncontroverted testimony demonstrates he believed were true at the time the statements were made, accurately reflected that the audit was nearly complete in July 2017. (A-1568; A-976-77). Respondents' statements about the status of the audit included words such as "anticipates," "expects," "still on path," and "almost complete," all supported by uncontradicted testimony from a financial consultant that at the time of the statements the audit was "98% complete" and that Appellants were being told by the auditor that the audit was near completion. (A-976-77; A-1072; A-1233-41; A-1247-50; A-1254--59).

Contrary to the SEC's assertion that Findley knew "he had no basis for repeatedly representing that the audit would soon be completed" (Appellee's Brief at 33), two disinterested witnesses provided unimpeached and uncontradicted testimony that at the time of the press releases the audit was "98% complete," and that Appellants were being told by the auditor that it was near completion. (A-976-77; A-1072). Unimpeached and contradicted evidence is evidence. Indeed, uncontroverted documents and testimony prove that the press releases were

7

reviewed by Harmon and Brunson, legal counsel and a financial consultant, respectively, prior to their finalization and did not raise any red flags. (A-741-43; A-1073). Further, documentary evidence and uncontroverted testimony proved that Halitron paid $100,000 to Friedman for the audit and confirmed that as of October 2, 2017 a 10-K had been drafted, finalization of which required that the audit be complete. (A-304-05; A-1265-1313).

The SEC's conclusory statements that "the repeated representations that the audit was almost complete" misled investors to believe that Halitron's "financials were in order" is unsupported by the record and fails to justify the erroneous findings in the Judgment. (Appellee's Brief at 32). The SEC's lone investor to testify, Gary Tas, *admitted* that the releases did not contain promises or guarantees, conceding that they were merely forward-looking expectations. (A-869-70). Tas, who was already well aware of the stock dilution and delayed audit, *testified that he purchased again* because the price of the shares was so low. (A-864-65; A-869).[2] Nothing more. As the uncontroverted testimony shows, Findley was working in good faith to positively impact Halitron and execute a long term plan to ultimately benefit financiers. (A-97; A-331-32; A-337; A-412; A-468-69; A-483; A-519-20; A-974-75; A-1070-74; A-1314-15).

---

[2] The SEC offered Tas's testimony, which Appellants objected to, to prove *materiality* and "*something extra*" required for scheme liability, despite dropping scheme allegations at the end of trial. (A-241-43). The SEC's claim that Tas's testimony somehow does anything other than undermine its case is misplaced.

Because the record clearly reflects that the SEC failed to meet its burden, and that no reasonable jury could find for the SEC on the evidence presented, Judgment must be reversed.

### ii.  True Statements Regarding the Stock Buyback

Similarly, Appellants' press releases regarding the stock buyback program contain only true and/or forward-looking statements subject to Safe Harbor protection, not factual misstatements or omissions. (A-1567; A-1233-41; A-1247-50; A-1254-59). Those press release dates and statements were so facially true and not materially misleading that they bear repeating; again, it is undisputed that the Board *had* approved a stock buyback program and that it *had* commenced as was announced:

- October 30, 2017: Halitron "today announced that *the Board has approved a stock buyback* of Halitron's common shares in the open market up to a stock price of $0.01."

- November 10, 2017: Halitron "now realizing a positive cash flow, and as previously announced, *this will be utilized to buy back shares in the open market* excluding the following blackout periods."

- January 22, 2018: "*Halitron has begun to buy back share* in the open market according to the 'black-out' periods disclosed in its filing to OTC Markets with the objective to increase its share price to $0.01 per share."

- February 6, 2018: "[r]ecent cash flows from operations have primarily been allocated to relocating the business and the build-out in Connecticut; however, *Management has allocated funds for two purchases of Halitron common stock in the open market*."

- February 28, 2018: in the second to last bullet point: "*Management has begun to and is committed to acquiring additional shares back in the open market to help support an increase in share price, of up to $0.01 per share. This is done in an effort to meet one of the qualifying factors of an up-list to the OTCQB.*"

- April 25, 2018: "*currently engaged in a share buyback program.*"

(A-1242, A-1245, A-1249, A-1251, A-1254, A-1258) (emphases added).

The SEC takes great pains to point out that Findley knew the stock buyback program was designed to increase shareholder value by decreasing the shares in circulation, but, as the SEC notes, Appellants do not dispute this. *This does not establish liability for securities fraud*. The press releases stated that Halitron had begun to buy back shares in the open market, which was *true*. (A331-332). Moreover, additional details supplementing the press releases were provided by Appellants in OTC Disclosures, providing a vast amount of information about Halitron, including the amount and price of such buybacks. (A-97; A-331-32; A-337; A-412; A-468-69; A-483; A-519-20).

The SEC argues that the press releases were allegedly misleading, in part, because they claimed the uplist requirements would be completed by the end of the first quarter of 2018. (Appellee's Brief at 36). However, as Findley testified, "*I don't say anywhere in any of the press releases that the share price is going up the next day to a penny, the next week, the next month, the next year.*" (A-327). Findley described that the stock buyback was pursuant to SEC guidance as a "*long-term program.*" (A-327-28). Further, the SEC claims that "Findley admitted at trial that

10

Halitron's quarterly reports" failed to disclose the number of discounted shares."
(Appellee's Brief at 37). However, Findley clearly testified that the November 15,
2018 OTC Disclosure (trial exhibit 608) discloses that the authorized share count
increased from 650 million to 2 billion. (A-533). Indeed, Findley testified: "…I'm
required to increase the authorized shares to have the shares to actually issue to the
finance company. So this is just a section that *clearly communicates kind of a
starting point to where we're issuing the shares* and the date at which those share
counts have changed." (*Id.*).

 Accordingly, the SEC failed to meet its burden, and no reasonable jury could
find for the SEC on the evidence presented.

### III. Ordering Disgorgement was Contrary to Supreme Court and Second Circuit Precedent and Reversible Error

 The District Court's ordering of disgorgement was reversible error because it
ignored that there was no evidence that investors had suffered pecuniary harm as a
result of the alleged fraud. Moreover, the SEC's failure to address either *Govil* or
*Liu* in its appellate brief is telling. The order of disgorgement must be reversed.

#### a. The SEC completely ignores *Liu* and *Govil*

 Appellee's failure to mention in its Brief the binding precedent from the
Supreme Court in *Liu* and its conclusory rejection of this Court's precedent in *Govil*
is stunning, yet unsurprising considering the SEC's inability to meet the standard
that disgorgement be "for the benefit of investors," and only if "*investors suffered*

pecuniary harm as a result of the fraud." *Liu v. SEC*, 591 U.S. 71 (2020); *SEC v. Govil*, 86 F.4th 89, 94 (2d Cir. 2023) (emphasis added).

At the Judgment Hearing, fully aware of the significance of *Liu*, the SEC openly admitted that it had gone "to extremely great lengths to find an investor to testify at trial" but that it would be "virtually impossible" and "infeasible to identify investors." (A-1497). Incredibly, the District Court admitted at the Judgment Hearing that it did not think *Liu* made "a lot of sense," and acknowledged that in this case disgorgement to investors was "pretty infeasible." (A-1509-10; A-1512). It was only after this Court rendered its *Govil* decision that the SEC changed its position, yet neither *Govil* nor *Liu* are mentioned in the SEC's brief. While the SEC and the District Court might not approve of *Liu* or *Govil*, they are nonetheless binding Supreme Court and Second Circuit precedent requiring reversal of the Judgment.

The SEC's reliance on pre-*Liu* and pre-*Govil* cases is misplaced. As the Supreme Court stated in *Liu*, the "equitable nature of the profits remedy generally requires the SEC to return a defendant's gains to wronged investors for their benefit." 591 U.S. 71, 88. This Court affirmed in *Govil* that disgorgement may only be ordered if "investors suffered pecuniary harm *as a result of the fraud*." 86 F.4th at 94 (emphasis added).

Appellee's reliance on, and the District Court's acceptance of Tas as the face of "harmed investors" from allegedly misleading press releases is clear error and a

misinterpretation of Tas's sworn testimony. Tas had merely complained about the delay of the audit as an existing investor, a sentiment with which Findley empathized. (A-1333). Tas noted that he did *not* buy or sell shares because of the press releases ultimately (and incorrectly) found to be misleading, explaining that he bought shares to "take advantage of the low stock price." (A-851). While Tas acknowledged the importance of audit financials to existing investors, in no way did he represent that he bought or sold shares because of the press releases improperly found to be misleading. (A-1574). Indeed, there was *no* evidence at trial that *any* investors bought or sold shares because of press release statements related to the status of the audit or the stock buyback program – none.

The District Court's noting that disgorgement to investors was "infeasible" and the SEC's post-*Govil* about-face claim that it was all of a sudden "feasible" to locate harmed investors is woefully insufficient to satisfy *Liu*'s and *Govil's* requirement that disgorgement be for the benefit of the investors who suffered pecuniary harm as a result of fraudulent statements. Indeed, the SEC did not even claim that the disgorged funds would go to harmed investors. Instead, to demonstrate that it was "feasible" to return the funds to investors, the SEC described in its post-trial, post-Judgment Hearing, post-*Govil* submission just three investors who could not as a matter of law have relied upon or been harmed by the press releases at issue.

(A-1557-60). Because the SEC and Judgment fail to acknowledge the development of the law on disgorgement, the Judgment should be reversed.[3]

### b. Disgorgement Could Not Be Ordered Under *Govil* and *Liu*

It is ironic that, weeks after trial and the Judgment Hearing, the SEC changed its position about locating harmed investors *after* Govil was decided by this Court, yet ignores *Govil* in its Brief because, as a matter of law, disgorgement in this case violated *Govil* (and *Liu*).

Disgorgement is appropriate where it comports with the traditional equitable limitations recognized in *Liu*. *SEC. v. Govil*, 86 F.4th 89 (2d Cir. 2023) ("because the district court found the investors were victims without determining whether those investors suffered pecuniary harm, the district court 'based its ruling on an erroneous view of the law' and thereby abused its discretion"). While traditionally an equitable remedy, 15 U.S.C. § 78u(d)(5) grants federal courts the authority to order equitable relief in enforcement actions so long as the relief is "appropriate or necessary for the benefit of investors." *Govil*, 86 F.4th at 99. In *Govil*, this Court specifically ruled that disgorgement can only be ordered if "investors suffered pecuniary harm *as a result of the fraud*." 86 F.4th at 94. Here, the record lacks any evidence of investor pecuniary harm resulting from alleged misstatements in the press releases.

---

[3] The District Court revealed its bias against precedent by claiming that "It seems the law has developed in a strange way, frankly, to add on a requirement that it has to be for the benefit of investors. That's a judge-made rule that I'm not sure makes a lot of sense…." (A-1509-10).

The SEC summarily notes emails from existing investors complaining about *dilution* of their holdings due to shares issued to lenders, but that dilution was not the subject of the SEC's claims against Appellants and had nothing to do with the statements about the stock buyback program or audit status at issue in the press releases. Dilution is dilution – not a misrepresentation. Tas's testimony acknowledged the peripheral role the statements about the audit and stock buyback program played in his investments, and the SEC's post-trial (not presented to the jury) and post-*Govil* statement by its financial economist is *on its face* insufficient evidence. (Appellee's Brief at 47). Again, Tas purchased additional shares well aware of the status of the stock buyback and delayed audit because the price of the shares was so low. (A-864-65; A-869).

The investors that the SEC suddenly identified after the trial and after the Judgment Hearing and after *Govil* suffered *de minimus* losses, which are very likely *not* attributable to the press release statements about the status of the audit and the stock buyback program, hardly justifying disgorgement. The first investor held his shares for *just 11 days*, with *no* allegedly misleading press releases during that 11 day period and with publicly available information unchanged. (A-1559). That investor realized a $200 loss, as a matter of law attributable to factors *other than* the press releases. The second investor sold just 2 million of his 12 million shares, with no purchase or sale dates identified, for a purported loss of $1,300. (*Id.*). The third

15

investor held his shares for *just one day*, during which time publicly available information remained unchanged, realizing a $17 loss.

Because the SEC failed to identify *any* investors that were harmed by Appellants' purportedly misleading press releases, the District Court erred under *Govil* and *Liu* in ordering disgorgement and should be reversed on appeal.

## IV.     The Civil Penalties are Unsupported by the Record and *Jarkesy*

Even assuming that the findings of securities violations were correct (they were not), the District Court abused its discretion by imposing a permanent injunction on Appellants and on Findley a four-year ban from the industry and uncalled-for third-tier civil penalties. Such penalties are unsupported by the Record and all but ensure financial ruin for Appellants. Further, contrary to the SEC's assertion, such draconian penalties are why the Supreme Court recently held in *Jarkesy* that such penalties *must be decided by a jury*. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2127-28 (2024). Here, it is undisputed that the jury did not decide the civil penalties imposed on Appellants. Thus, the penalties decided by the judge and not the jury were not only unsupported by the record, but violated *Jarkesy* and Findley's Seventh Amendment rights.

The SEC's attempt to distinguish *Jarkesy* is misguided. The SEC claims that *Jarkesy* only pertains to administrative proceedings, but that is not the case. (Appellee's Brief at 49). The Supreme Court made clear that *Jarkesy* presents "a

straightforward question: whether the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud." *Jarkesy*, 144 S. Ct. at 2127. The fact that *Jarkesy* was initially heard by an administrative panel does not alter the Supreme Court's holding that:

> the civil penalties in this case are designed to punish and deter, not to compensate. They are therefore a type of remedy at common law that could only be enforced in courts of law. That conclusion effectively decides that this suit implicates the Seventh Amendment right, and that a defendant would be entitled to a jury on these claims.

*Id.* at 2130 (internal citation and quotation marks omitted).

Here, the District Court went beyond the findings of the jury and made new, additional findings of fact to support the Judgment and to impose civil penalties. As the Supreme Court made clear, such findings violate Appellants' Seventh Amendment right.

Notwithstanding the clear violation of Appellants' Seventh Amendment right under *Jarkesy*, the record also makes clear that Appellants went above and beyond to keep existing investors informed about various issues, including the status of the audit and the buyback program, and hired securities counsel and a financial consultant to ensure that communications were not misleading. (A-97; A-331-32; A-337; A-412; A-468-69; A-483; A-519-20). Thus, while *Jarkesy* makes clear that the trial judge's imposition of penalties was wrong as a matter of law and must be reversed, even if not reversed on that basis the record makes clear that the District

17

Court abused its discretion when imposing such draconian career-ending civil penalties on Appellants. The imposition of a permanent injunction, four-year injunction and civil penalties should be reversed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should reverse the Judgment.

Alternatively, the Judgment should be vacated and remanded for a new trial.

Respectfully submitted,

**BERNARD FINDLEY and
HALITRON, INC.,
Defendants– Appellants,**

By: */s/ Joseph M. Pastore III*
Joseph M. Pastore III
Leanne M. Shofi
PASTORE LLC
4 High Ridge Park, Third Floor
Stamford, CT 06905
203-658-8454 (tel)
203-348-0852 (fax)

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure 32(a)(7)(B) and contains 4228 words, exclusive of the corporate disclosure statement, the table of contents, and the table of authorities, as counted by the Microsoft Word word-processing program used to generate this brief. I also certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word wordprocessing program with a 14-point Times New Roman font.

Dated: November 22, 2024

**PASTORE LLC**
**Counsel for Defendants-Appellants**
**Bernard Findley and Halitron, Inc.**

By: */s/ Joseph M. Pastore III*
Joseph M. Pastore III
Leanne M. Shofi
PASTORE LLC
4 High Ridge Park, Third Floor
Stamford, CT 06905
203-658-8454 (tel)
203-348-0852 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that November 22, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 22, 2024

**PASTORE LLC**
**Counsel for Defendants-Appellants**
**Bernard Findley and Halitron, Inc.**

By: */s/ Joseph M. Pastore III*
Joseph M. Pastore III
PASTORE LLC
4 High Ridge Park, Third Floor
Stamford, CT 06905
203-658-8454 (tel)
203-348-0852 (fax)